UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| Elizabeth M. Saaiman, Plaintiff, v. American General Life Insurance Company, Inc., a Texas Corporation; ACG Life Insurance Company, a Texas Corporation; American International Group, Inc., a Delaware Corporation; AIG Life Holdings, Inc., a Delaware Corporation; SAFG Retirement Services, Inc., a Delaware Corporation, Defendants. | Case No.: 18-cv-596-BTM-AGS<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND WITHOUT PREJUDICE AND GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>**[ECF Nos. 10, 5]** |
|---|---|

Plaintiff Elizabeth M. Saaiman moves to remand, (ECF No. 10 ("Mot. Remand")), and Defendants American General Life Insurance Company ("American General"), AGC Life Insurance Company ("AGC"), American International Group, Inc. ("AIG Group"), AIG Life Holdings, Inc. ("AIG Holdings"), and SAFG Retirement Services, Inc. ("SAFG") (collectively, Defendants) move to dismiss for lack of subject matter jurisdiction and failure to state a claim, (ECF No. 5 ("MTD")). For the reasons discussed below, the Court **denies** Plaintiff's

motion to remand without prejudice and **grants** Defendants' motion to dismiss, with leave to amend.

In March 2009, Plaintiff's husband, Mr. Danie Saaiman, took out a life insurance policy (#YME0162737) for $1 million, issued by American General. (ECF No. 1-4, Ex. 7A ("Policy").) The only two parties to the Policy were Mr. Saaiman and American General. (Id.) Mr. Saaiman was the owner of the policy, and Plaintiff was the primary beneficiary. (Id.) Mr. Saaiman died on January 17, 2017. (ECF No. 1-2 ("Compl."), ¶¶ 13.) No benefit payments have been made on the Policy. (Id.)

The policy lapsed in the summer of 2016. (Id. at ¶¶ 14-15.) Mr. Saaiman completed a reinstatement application on or about August 31, 2016 and transmitted the application via facsimile on or about September 1, 2016. (ECF No. 1-2 ("Compl."), ¶¶ 16-17.) The policy was eventually reinstated on or about March 9, 2017. (Id. at ¶ 26; ECF No. 1-4, Ex. 7 ("Adcock Decl."), ¶ 3.)

On April 4, 2017, Plaintiff's attorney, Mr. Branson, informed a service relationship manager for AIG Consumer Insurance that Mr. Saaiman died in January 2017 during the reinstatement process. (ECF No. 10-2 ("Branson Decl."), ¶ 7.) On April 11, 2017, Mr. Branson received a letter dated April 6, 2017, purporting to unreinstate the policy and refund premium payments. (Id. at ¶ 8, Ex. 5.) On May 2, 2017, Mr. Branson rejected the refund of payments and submitted a claim for benefits under the policy. (Compl., ¶ 30; Branson Decl., ¶ 9.) Plaintiff received a letter in September 2017 denying her insurance claim. (Compl., ¶ 39.)

On November 9, 2017, Plaintiff filed a suit in the Superior Court of California, alleging violations of breach of contract, insurance bad faith, conversion, and negligence. (Id.) Plaintiff raises her allegations against all five Defendants, in part based on theories of alter ego and agency liability. (Id. at ¶¶ 8-9.) American General is a wholly owned subsidiary of AGC, which is a

wholly owned subsidiary of AIG Holdings, which is a wholly owned subsidiary of SAFG, which is a wholly owned subsidiary of AIG Group. (ECF No. 1 ("Notice of Removal" or "Notice"), ¶ 21.)

On March 21, 2018, Defendants filed a notice of removal under 28 U.S.C. §§ 1332, 1441, and 1446 on the basis that the action is between parties of diverse citizenship and involves an amount in controversy exceeding $75,000. (Id. at ¶ 4.) Plaintiff asserts in the complaint that she is a resident of California residing in the City of San Diego. (Compl., ¶ 1.) Defendants assert that American General, AGC, and AIG Holdings are citizens of Texas and that AIG Group is citizen of New York. (Notice, ¶¶ 7-10.) Defendants also concede that SAFG is a citizen of California for diversity jurisdiction purposes and consequently is nondiverse as to Plaintiff, also a citizen of California. (Id. at ¶¶ 11, 16.) Defendants argue that removal is nonetheless appropriate because a defendant may remove a case with a non-diverse defendant on the basis of diversity jurisdiction and then seek to persuade the district court that the non-diverse defendant was fraudulently joined. (Id. at ¶ 16.)

Plaintiff moves to remand, arguing that removal was improper because Defendants fail to demonstrate that SAFG was fraudulently joined. Defendants move to dismiss due to lack of subject matter jurisdiction and failure to state a claim.

//

**PART I. MOTION TO REMAND**

### Standard

The removal statute is strictly construed against removal jurisdiction, and the defendant bears the burden of establishing that removal is proper. *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009). A defendant may remove a case with a non-diverse defendant on the basis of diversity jurisdiction by establishing that the non-diverse defendant was

fraudulently joined. *See McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). "The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009) (quoting *Smallwood v. Illinois Central R.R. Co.,* 385 F.3d 568 (5th Cir. 2004) (en banc)).

"If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *Id.* "If there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary." *Id.* (quoting *Florence v. Crescent Res., LLC,* 484 F.3d 1293, 1299 (11th Cir. 2007)).

To determine whether the plaintiff has stated a cause of action against a resident defendant, the court looks to the complaint and need not "speculate about possible claims." *Kwasniewski v. Sanofi-Aventis U.S., LLC*, 637 Fed. App'x 405, 406 (9th Cir. 2016) (citing *Hunter*, 582 F.3d at 1046). Moreover, whether the complaint is sufficient in stating a claim against the resident defendant "does *not* include consideration of whether, with further discovery, the plaintiff may uncover a factual basis for its claims." *TPS Utilicom Servs., Inc. v. AT& T Corp.*, 223 F. Supp. 2d 1089, 1102 (C.D. Cal. 2002) (emphasis in original). Any "deference given to the plaintiff in a fraudulent joinder analysis means that the court refrains from delving into the merits of defenses that do not present a procedural bar to the action." *Id.*

Finally, while the test for fraudulent joinder resembles a Rule 12(b)(6) analysis, the inquiry is broader in that "[t]he defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent." *Id.* (citing *McCabe*, 811 F.2d at 1339); *see also Hunter*, 582 F.3d at 1044.
//

## Discussion

Plaintiff's complaint alleges breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, and negligence. Plaintiff brings these claims against Defendants under theories of direct and vicarious liability. Defendants argue that Plaintiff fails to plead facts to support the allegations that the nondiverse defendant, SAFG, is liable under any theory.

### A. Failure to State A Claim Under a Theory of Direct Liability

Plaintiff fails to state any cause of action against SAFG under a theory of direct liability. First, any breach of contract claim asserted directly against SAFG must fail because SAFG was never a party to the Policy. The only two parties to the contract were Mr. Saaiman and American General. As to SAFG, Plaintiff does not allege the existence of a contract, breach, or resulting damages. *See Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 820-21 (2011) ("The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, breach of fiduciary duty, and damages.").

Second, Plaintiff fails to state a cause of action against SAFG based on a breach of the implied covenant of good faith and fair dealing because Plaintiff does not allege contractual privity with SAFG. *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 21 Cal. App. 4th 1586, 1599 (1994) (stating that action for breach of the implied covenant of good faith and fair dealing requires a contractual relationship between the parties because the covenant is an implied term in the contract). Nor does Plaintiff allege that SAFG took any wrongful acts to interfere with Plaintiff's rights under the Policy.

Third, Plaintiff's claim for conversion fails because Plaintiff does not present facts that SAFG took any wrongful action to interfere with Plaintiff's possession of unearned premium payments allegedly belonging to her. *McKell v. Washington Mut. Inc.*, 142 Cal. App. 4th 1457, 1491 (2006) ("A cause of action for conversion requires allegations of plaintiff's ownership or right to possession of property;

1  defendant's wrongful act toward or disposition of the property, interfering with
plaintiff's possession; and damage to plaintiff.").

Fourth, the complaint fails to state a negligence claim against SAFG because Plaintiff makes no allegation that SAFG played any role in the administration of the Policy, the reinstatement process, or the handling of Plaintiff's insurance claim. Thus, SAFG owed no legal duty to Plaintiff. *Huber v. Tower Grp., Inc.*, 881 F. Supp. 2d 1195, 1199 (E.D. Cal. 2012) (characterizing the elements to state a claim for negligence as follows, "(1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury") (citing *Mendoza v. City of L.A.,* 66 Cal. App. 4th 1333, 1339 (1998)).

While Plaintiff demonstrates that SAFG and American General share at least one corporate officer, Julie Cotton Hearne, this is insufficient to state any claim based on direct liability. Specifically, Plaintiff emphasizes that Ms. Hearne is the Vice President and Secretary of both SAFG and American General. (See ECF No. 12-1 ("SAFG Hearne Decl."); ECF No. 12-2 ("American General Hearne Decl.").) Plaintiff argues that Ms. Hearne's role as both an officer of SAFG and American General supports a claim of intentional interference with a contractual relationship against SAFG under a theory of direct liability because the two declarations together demonstrate SAFG's knowledge of the insurance contract. (ECF No. 13 ("Pl.'s Reply"), p. 9 (citing *Higgins v. Standard Fed. Sav. & Loan Ass'n*, 188 Cal. App. 2d 68, 71-72 (1961) for the proposition that when an individual is an agent of two companies, her knowledge about one is imputed to the other).) Even so, and as Plaintiff also points out, intentional interference with a contractual relationship also requires a contract between the plaintiff and a third party, intentional acts by the defendant designed to induce a breach or disruption of the contractual relationship, actual breach or disruption, and resulting damage. *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).

However, as stated above, Plaintiff has not pled any facts that SAFG acted in any way to interfere in the Policy.

**B. Failure to State Any Claim Under Theories of Vicarious Liability**

Plaintiff also fails to state a claim based on the theory that SAFG is liable for the acts of American General. Under California law, a parent corporation may be held vicariously liable for the acts of its subsidiary only if that subsidiary is either the agent or alter ego of the parent. *Salkin v. United Servs. Auto Ass'n*, 767 F. Supp. 2d 1062, 1065 (C.D. Cal. 2011). To allege claims based on agency or alter ego liability, Plaintiff must plead specific facts, rather than mere conclusory allegations. *See Cree, Inc. v. Tarr Inc.*, No. 3:17-cv-00506, 2017 WL 3219974, *7 (S.D. Cal. July 28, 2017) (alter ego); *Lincoln III v. Daylight Chem.*, No. SACV 10-1573, 2011 WL 13225067, *7 (C.D. Cal. Feb. 14, 2011) (agency).

Whether a principal-agent relationship exists between a parent corporation and its subsidiary hinges on the degree of control the parent exerts over the subsidiary. *See Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 541 (2000) ("Control is the key characteristic of the agent/principal relationship."). Liability may be attributed to the parent "where the nature and extent of the control exercised over the subsidiary by the parent is so pervasive and continual that the subsidiary may be considered nothing more than an agent or instrumentality of the parent, notwithstanding the maintenance of separate corporate formalities." *Id.*; *see also Salkin*, 767 F. Supp. 2d at 1068.

The determination of alter ego liability is a question of fact, not law. *See Misik v. D'Arco*, 197 Cal. App. 4th 1065, 1071-72 (2011). There are two general requirements, first "that there be such unity of interest and ownership that the separate personalities of the [parent] and the [subsidiary] no longer exist" and second "that, if the acts are treated as those of the [subsidiary] alone, an inequitable result will follow." *Mid-Century Ins. Co. v. Gardner*, 9 Cal. App. 4th 1205, 1212 (1992) (quotations and citations omitted). Moreover, courts have

relied on an array of more than fifteen different factors when making the determination as to the first requirement. *See id.* at 1213 (citing *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 838-40 (1962)). Relevant considerations to the inquiry here include the "identification of the directors and officers of the two entities in the responsible supervision and management" and "the employment of the same employees and/or attorney." *Associated Vendors, Inc.*, 210 Cal. App. 2d at 840-41.

Plaintiff argues she has provided facts sufficient to satisfy the requirements for stating a claim based on theories of agency and alter ego liability. For example, Plaintiff points out that SAFG and American General share a corporate officer, Julie Cotton Hearne. (See SAFG Hearne Decl.; American General Hearne Decl.) However, this fact does not support a theory of vicarious liability. *See Sonora Diamond Corp.*, 83 Cal. App. 4th at 549 ("It is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts.") (internal citations and quotations omitted).

Plaintiff also presents correspondence from a medical records company that stated it was requesting records from Mr. Saaiman on behalf of an insurance company called, "AIG Life & Retirement-Nashville." (Branson Decl., ¶ 3; Mot. Remand, Ex. 1.) Plaintiff argues that this shows that American General was not solely responsible for the underwriting, issuance, and administration of the Policy. (Branson Decl., ¶ 3.) In response, Defendants declare that American General has an office near Nashville, where it has employees who handle claims. (American General Hearne Decl., ¶ 4.) Without more, the correspondence fails to show that American General's actions could be attributed to another entity or were the result of another entity's direction or supervision.

Plaintiff also offers a copy of the "AIG Code of Conduct," which "provides ethical guidelines for conducting business on behalf of all AIG companies."

(Branson Decl., ¶ 4; Mot. Remand, Ex. 2.) In addition, Plaintiff provides a copy of the "American International Group, Inc. Third Party Code of Conduct" published on AIG Group's website. (Branson Decl., ¶ 5; Mot. Remand, Ex. 3.) In the introduction, the code refers to "AIG" as "American International Group, Inc., along with its subsidiaries and affiliates (collectively, 'AIG')." (Mot. Remand, Ex. 3.) In the second paragraph on "scope," the code also states that it "applies to all Third Parties engaged by AIG anywhere in the world." (Id.) However, these facts do not demonstrate the kind of pervasive and continual control necessary for establishing agency liability or such a unity of interest that would make it difficult to distinguish among the AIG companies, as required for alter ego liability. *See Sonora Diamond Corp.*, 83 Cal. App. 4th at 542 (emphasizing that agency requires a showing that the parent "moved beyond the establishment of general policy and direction for the subsidiary and in effect [took] over performance of the subsidiary's *day-to-day* operations in carrying out that policy") (emphasis in original).

     Plaintiff also presents an email requesting an additional payment to reinstate the Policy from Ms. Sheena Long, whose signature block includes "AIG" and indicates that she is a "Service Relationship Manager" in the "Customer Solutions Unit – Life" of "AIG Consumer Insurance." (Branson Decl., ¶ 6; Mot. Remand, Ex. 4.) This fact fails to support claims based on agency or alter ego, because it does not reveal that SAFG or any of the three other defendants were controlling the operations or decision-making of American General.

     Finally, Plaintiff pleads no facts at all in support of the second prong of alter ego liability, which demands a showing that an inequitable result will follow if the Court considers the actions taken by American General to be those of American General alone. Specifically, Plaintiff presents no facts that American General would be unable to satisfy a judgment that Plaintiff might obtain. Thus, Plaintiff fails to plead facts sufficient to state any claim under agency and alter

ego theories.

Accordingly, because Plaintiff has failed to state a claim against SAFG, the Court **denies** Plaintiff's motion to remand. However, the Court agrees with Plaintiff that establishing agency and alter ego liability is particularly fact intensive, especially with respect to the inequitable result prong of alter ego. Thus, the denial is without prejudice.

//

**PART II. MOTION TO DISMISS**

<u>**Standard**</u>

**A. Fed. R. Civ. P. 12(b)(1)**

Defendants challenge the Complaint, in part, on the ground that Plaintiff lacks Article III standing. Standing under Article III of the U.S. Constitution is an element of subject matter jurisdiction. Generally, on a 12(b)(1) motion regarding subject matter jurisdiction, unlike a 12(b)(6) motion, a court need not defer to a plaintiff's factual allegations. But the Supreme Court has held that where a 12(b)(1) motion to dismiss is based on lack of standing, the Court must defer to the plaintiff's factual allegations and must "presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.* at 560. In short, a 12(b)(1) motion to dismiss for lack of standing can only succeed if the plaintiff has failed to make "general factual allegations of injury resulting from the defendant's conduct." *Id.*

**B. Fed. R. Civ. P. 12(b)(6)**

Defendants also move to dismiss the Complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted only where a plaintiff's complaint lacks a "cognizable legal theory" or

sufficient facts to support a legal claim. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). When reviewing a motion to dismiss, the allegations of material fact in the plaintiff's complaint are taken as true and construed in the light most favorable to the plaintiff. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Although detailed factual allegations are not required, the factual allegations made "must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Only a complaint that states a plausible claim for relief will survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## Discussion

**A. Four Defendants Other Than American General**

Aside from Defendant American General, Plaintiff's pleadings make no meaningful factual distinctions among Defendants.[1] Thus, the analysis in Part I determining that the Complaint fails to state any claim against Defendant SAFG applies to Defendants AGC, AIG Group, and AIG Holdings as well. Accordingly, the Court **grants** Defendants' motion to dismiss as to Defendants SAFG, AGC, AIG Group, and AIG Holdings.

**B. American General**

Defendant American General moves to dismiss the Complaint with respect to causes of action two, three, and four.

### 1. Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiff alleges that American General breached the covenant of good faith and fair dealing implicit to the Policy. Plaintiff argues that American General breached the covenant by delaying the proper reinstatement of the Policy and by denying Plaintiff's insurance claim under the Policy. American General moves to

---

[1] As discussed above, the exception is that Plaintiff points out that SAFG and American General share a corporate officer, Ms. Hearne. In Part I, the Court held that this fact was not sufficient to establish claims of either direct or vicarious liability.

dismiss this cause of action in its entirety, arguing that Plaintiff lacks standing to assert bad faith based on any delay in the reinstatement that occurred before Mr. Saaiman died and that Plaintiff fails to state a claim.

Under California law, "[e]very contract imposes on each party an implied duty of good faith and fair dealing. Simply stated, the burden imposed is that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Bosetti v. U.S. Life Ins. Co.*, 175 Cal. App. 4th 1208, 1235 (2009) (internal citations and quotations omitted). A breach of this duty, often referred to as bad faith as a shorthand, "implies unfair dealing rather than mistaken judgment." *Id.* To avoid liability for bad faith, an insurer's "actions and position with respect to the claim of an insured, and the delay or denial of policy benefits, must be founded on a basis that is *reasonable under all the circumstances*." *Id.* at 1237 (emphasis in original) (internal citations and quotations omitted). This is an objective standard. *Id.* Importantly, "[a]n insurer denying or delaying the payment of policy benefits due to the existence of a *genuine dispute* with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract." *Id.* To state a claim of breach of the implied covenant of good faith and fair dealing, the Complaint must allege (1) the existence of a contract between plaintiff and defendant, (2) substantial performance by plaintiff, (3) conditions required for defendant's performance had occurred or were excused, (4) defendant unfairly interfered with plaintiff's rights under the contract, and (5) plaintiff suffered harm as a result of defendant's conduct. *See Judicial Council of California Civil Jury Instructions* (2019 ed.), CACI No. 325.

### a. Delay in the Reinstatement of the Policy

As to the delay in the reinstatement of the Policy, Plaintiff alleges that American General failed to act promptly in addressing the reinstatement

application. Plaintiff asserts that Mr. Saaiman completed and sent in the reinstatement application in September 2016 and that there was no reason to believe that this was not enough to reinstate the Policy. (Compl., ¶¶ 16-17, 56-57.) Nor did Plaintiff know until January 2017 that the Policy had not in fact been reinstated. (Id.) When Mr. Saaiman's attorney realized the Policy had not been reinstated in January 2017, he allegedly took immediate steps to address the fact that the Policy had not been reinstated. (Id. at ¶¶ 20-30.) Even so, the parties do not dispute that the Policy was not reinstated until several months later. (Id. at ¶ 26.)

Plaintiff has standing to bring a bad faith claim with respect to events relating to the reinstatement before Mr. Saaiman died because Plaintiff was at all times a third party beneficiary of the Policy. *See Fireman's Fund Ins. Co. v. Maryland Cas. Co.,* 21 Cal. App. 4th 1586, 1599-1600 (1994) ("Certainly a noncontracting party is entitled to sue an insurer for breach of the implied covenant if that noncontracting party is a third party beneficiary of the insurance contract.").

However, under all the circumstances, the Complaint fails to state a claim of bad faith against American General with respect to the delay. On the one hand, the allegation of how much time lapsed between the submission of the reinstatement application and the eventual reinstatement supports the claim that the delay was unreasonable. Moreover, American General fails to raise any genuine dispute as to why the delay occurred. On the other hand, notwithstanding the allegation of unreasonable delay, Plaintiff fails to allege that she was harmed by the delay, because the Policy was eventually reinstated. A claim of bad faith would require Plaintiff to allege that she suffered an injury as a result of the delay. Perhaps Plaintiff asks the Court to infer that the delay interfered with any possibility Plaintiff may have had in timely curing the deficiencies in the reinstatement application that American General relied on in

denying the insurance claim. However, no facts are alleged to support this hypothetical injury, and asking the Court to adopt this inference would be pure speculation.

### b. Denial of Insurance Claim

As to the denial of Plaintiff's insurance claim, Plaintiff alleges that the reasons given by American General in its denial letter were merely pretextual. Plaintiff further alleges that the statements made by American General in the denial letter are false. The denial letter, however, informed Plaintiff that the claim was denied because Mr. Saaiman failed to provide important information in response to at least three questions on the reinstatement application, and for that reason, the reinstatement application would not have been reinstated upon further evaluation of Mr. Saaiman's health. Thus, American General demonstrates that there is genuine dispute as to why Plaintiff's insurance claim was denied. As a result, American General is not liable in bad faith based on the denial of benefits, even though it might be liable for breach of contract.

Accordingly, the Court **grants** the dismissal of the second cause of action for breach of the implied covenant of good faith and fair dealing.

### 2. Conversion

Plaintiff alleges a claim of conversion based on unearned premiums. "A cause of action for conversion requires allegations of plaintiff's ownership or right to possession of property; defendant's wrongful act toward or disposition of the property, interfering with plaintiff's possession; and damage to plaintiff." *McKell*, 142 Cal. App. 4th at 1491 (2006). "Money cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment." *Id.*

Plaintiff argues she is indisputably owed at least $322.01 plus interest based on unearned premium payments that should have been refunded to her.

Plaintiff essentially argues that she has been overcharged under the Policy, which Plaintiff can assert as part of her breach of contract claim. An overcharge, however, is not enough to make out an independent claim of conversion. *Id.* at 1492 (explaining that California courts have declined to recognize a cause of action for conversion based on an overcharge). Moreover, Plaintiff does not allege that American General has been or is holding this payment on behalf of another. *See id.* at 1491. Thus, the Court **grants** Defendants' motion to dismiss the third cause of action against American General.

### 3. Negligence

Plaintiff alleges that American General was negligent in failing to (a) process the reinstatement application in a timely manner, (b) monitor the reinstatement application for time sensitive communication, (c) respond promptly to communications from Plaintiff, and (d) maintain the Policy or process the insurance claim with reasonable care.

To prove a cause of action for negligence, a plaintiff must show "(1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury." *Huber*, 881 F. Supp. 2d at 1199 (E.D. Cal. 2012) (citing *Mendoza v. City of L.A.,* 66 Cal. App. 4th 1333, 1339 (1998)).

As to (a) and (b), American General argues that Plaintiff cannot allege injury due to any failure to process and monitor the reinstatement application because the Policy was eventually reinstated. The Court agrees and holds that without alleging any harm or damages, Plaintiff's negligence claim with respect to the processing of the reinstatement application must fail.

As to (c) and (d), which allege negligence in the handling of Plaintiff's insurance claim, Plaintiff fails to state a claim because California does not recognize a cause of action based on negligent claim handling. *See id.* at 1200 ("[U]nder California law, negligence claims do not generally lie against insurers.").

California courts explain that "a contractual obligation may create a legal duty and the breach of that duty may support an action in tort," but "conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law." *Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1991). Here, Defendant's obligation under the Policy was to properly handle any insurance claim. There is no independent duty to take reasonable care in the handling of the claim, so Plaintiff fails to state a cause of action for negligence with respect to the handling of the insurance claim.

Thus, the Court **grants** Defendants' motion to dismiss the fourth cause of action against American General.

## CONCLUSION

For the reasons discussed above, Plaintiff Elizabeth M. Saaiman's motion to remand (ECF No. 10) in **denied** without prejudice. Defendants' motion to dismiss (ECF No. 5) is **granted, with leave to amend**. Any amended complaint must be filed and served by May 17, 2019.

**IT IS SO ORDERED**.

Dated: April 25, 2019

_____
Honorable Barry Ted Moskowitz
United States District Judge